UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Robert McDermott,

    Plaintiff,                                        Honorable Sean F. Cox

v.                                                                       Case No. 11-11469

Randall S. Miller & Associates, P.C.,

    Defendant.
_____/

**<u>OPINION & ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT RANDALL S. MILLER & ASSOCS., P.C.'S
MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT</u>**

        Plaintiff filed this action, asserting claims under the Fair Dept Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against both Defendant Ocwen Loan Servicing, LLC ("Ocwen") and Randall S. Miller & Associates, P.C.  Plaintiff has since dismissed his claims against Ocwen.  The matter is currently before the Court on Defendant Randall S. Miller & Associates, P.C.'s Motion to Dismiss and/or for Summary Judgment.  For the reasons set forth below, the Court shall GRANT THE MOTION IN PART AND DENY THE MOTION IN PART.  The Court shall GRANT the motion to the extent that it shall dismiss Plaintiff's claims under § 1692e and § 1692f of the Act.  The Court shall DENY the motion in all other respects.

**BACKGROUND**

        Plaintiff's Amended Complaint asserts the following one count against Defendant Randall S. Miller & Associates, P.C.: "Violation of the Fair Dept Collection Practices Act Randall S. Miller & Associates, P.C." (Count I).  Specifically, Plaintiff alleges that Defendant

1

violated the following sections of the FDCPA: 1) § 1692d; 2) § 1692e; 3) § 1692f; and 4) § 1692g.  (*See* Pl.'s Am. Compl. at 6-7).  Plaintiff made a jury demand.

The current Scheduling Order provides that: 1) witnesses were to be named by October 7, 2011; 2) discovery shall be completed by November 7, 2011; and 3) motions must be filed by December 7, 2011.  (Docket Entry No. 11).

On July 25, 2011, Defendant Randall S. Miller & Associates, P.C. filed the instant "Motion to Dismiss and/or for Summary Judgment."  (Docket Entry No. 15).  Although the motion was filed as a motion to dismiss and/or a motion for summary judgment, because the motion relies on matters outside the pleadings, Plaintiff agrees that the motion should be treated a motion for summary judgment under FED. R. CIV. P. 56.  (*See* Pl.'s Resp. Br. at 1).

This Court's practice guidelines for motions for summary judgment provide, in pertinent part, that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

Along with Defendant's Motion for Summary Judgment, Defendant filed a "Statement of

Material Facts Not In Dispute" that follows this Court's practice guidelines. Along with Plaintiff's Response, Plaintiff filed its "Counter Statement of Disputed Facts."

The following material facts are gleaned from the parties' statements and the evidence submitted by the parties, taken in the light most favorable to Plaintiff.

On August 3, 2010, Ocwen sent a letter to Plaintiff Robert McDermott in Lakeside, Michigan referencing a mortgage on property in Niles, Michigan ("the Niles Property"). The letter stated that it was a "Notice of Default" and stated that the mortgage payments were past due, and the borrower owed $3,094.31. The letter contained the account number of the loan (71187967), as well as the address of the Niles Property (2674 Terminal). (Def.'s Stmt. at ¶ 1; Pl.'s Stmt. at ¶ 1; Ex. A to Pl.'s Am. Compl.). That letter contained the following statement at the bottom of each page:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended and does not constitute an attempt to collect a debt.

(*Id.*).

It is undisputed that Plaintiff did not have any ownership interest in the Niles Property and did not have a mortgage debt of any kind secured by the Niles Property. (Def.'s Stmt. at ¶ 2; Pl.'s Am. Compl. at ¶¶ 8-10).

On August 21, 2010, Plaintiff sent a letter to Ocwen in response to its August 3, 2010 letter. (Pl.'s Am. Compl. at ¶ 11; Ex. B to Pl.'s Am. Compl.). That letter advised Ocwen that Plaintiff is not the debtor under loan 7118967, that Plaintiff has no ownership interest in the Niles Property and no mortgage debt of any sort secured by property in Michigan. The letter

3

asked that Ocwen correct its records and "cease immediately your efforts to collect money from me, because I have no connection with the debt you are trying to collect." (*Id.*).

On August 31, 2010, Ocwen sent Plaintiff another letter concerning the Niles Property. (Ex. C to Pl.'s Am. Compl.). Among other things, that letter referenced repayment plans and modification programs. The letter contained the same language at the bottom of each page that the first letter from Ocwen contained.

On September 2, 2010, Ocwen sent Plaintiff another letter. That letter stated, "You stated that the above referenced loan has been fraudulently taken out using your personal information" and asked Plaintiff to provide Ocwen with various items, including a copy of his social security card and driver's license. (Ex. D to Pl.'s Am. Compl.). The letter enclosed "Instructions for Completing the ID Theft Affidavit," which, among other things, stated that "[c]ompleting this affidavit does not guarantee that . . . the debt will be cleared." The letter contained the same language at the bottom of each page that the first letter from Ocwen contained.

On September 17, 2010, Ocwen sent Plaintiff a statement concerning the Niles Property, indicating that $2,609.22 was past due and due immediately and that total amount due was $4,919.03. (Ex. G to Pl.'s Br.). That letter also stated: "We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report." (*Id.*).

On September 28, 2010, Ocwen sent Plaintiff another letter regarding the Niles Property. That letter stated:

> As your mortgage servicer, Ocwen Loan Servicing, LLC ("Ocwen") is prepared
> to assist customers such as you who are experiencing a financial hardship that

4

> makes it difficult to meet your mortgage obligations. However, in order for Ocwen to recommend potential options, you must submit all required documentation listed below.  If all requested documents are not submitted or not complete, your application will not be reviewed.
>
> The review process will take up to 30 days after the receipt of the completed package.  During this time, Ocwen will not delay or stop any collection or legal activity on your loan.  Therefore, it is important to complete the package and fax it back to Ocwen as quickly as possible.  Please ensure all items on the checklist are submitted.
>
> ☐ **Signed and completed Request for Financial Information – Exhibit A**
> ☐ **2 most recent pay stubs for all employed Borrowers and documentation of other sources of income (child support, alimony, rental income, social security, etc.)**
> ☐ **W-2 Statement OR Federal Income Tax Forms (SELF EMPLOYED ONLY)**
> ☐ **2 most recent Bank Statements for all checking and savings accounts**
>
> Please fax the financial statement and documents to:
> Ocwen Loan Servicing, LLC
> (407) 737-6174
>
> ***Before returning the application, please make sure to sign and date the form***.

(Ex. D to Pl.'s Am. Compl.) (bolding and italics in original).  The letter contained the same language at the bottom of each page that the first letter from Ocwen contained.

On October 6, 2010, Randall S. Miller & Associates ("Defendant") sent Plaintiff and Clara McDermott a letter regarding the Niles Property.  (Def.'s Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5; Ex. E to Pl.'s Am. Compl.).  The subject line of that letter stated: "NOTICE PURSUANT TO SEC. 3205a via First Class Mail and Certified Mail - Return Receipt Requested."  (*Id*.).  The body of the letter stated:

> Dear Borrower(s):
>
> Please be advised that our office has been retained by Ocwen Loan Servicing LLC **to commence foreclosure proceedings** against the above described

property.

**The mortgage loan above is in default due to non-payment of installments starting with July 1, 2010 and all subsequent payments through today's dated.**
**The total amount due as of the date of this notice is $4,709.63.**

This mortgage is serviced by Ocwen Loan Servicing LLC and Ocwen Loan Servicing LLC has designed Randall S. Miller & Associates, P.C., whose address is 43252 Woodward Avenue, Suite 180, Bloomfield Hills, MI 48302 and whose **loan modification department's number is 313-583-3336, with the authority to make agreements under section 3205b and 3205c of 1961 PA 236.  Please contact our office** at this number or via email at [loanmods@millerlaw.biz](mailto:loanmods@millerlaw.biz) **to request a meeting.**

Enclosed with this notice is a list of housing counselors prepared by the Michigan State Housing Development Authority.  **You may request a meeting with the designee named above within 14 days of the date of this notice to attempt to work out a modification of this mortgage loan to avoid foreclosure**. You may also request that a housing counselor attend this meeting.  If you request a meeting with the designee, foreclosure proceedings will not be commenced until at least 90 days after the date of this notice.
If, during the above described meeting, an agreement is reached to modify the mortgage loan, the mortgage will NOT be foreclosed as long you abide by the terms of the modification agreement.  **On the other hand, if no agreement to modify the mortgage loan is reached, and it is determined that you meet criteria for a modification under Section 3205c(1), the foreclosure of the mortgage must then proceed before a judge instead of through advertisement.**

You have the right to contact an attorney.  The Michigan State Bar Lawyer Referral Service may be reached at 800-968-0738. A list of Legal Aid offices is also attached to this letter.

**To the extent your original obligation has been discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and/or is notice of the creditor's intent to enforce a lien against the property and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.**

(*Id.*) (emphasis added).

On September 17, 2010, Ocwen sent Plaintiff another statement concerning the Niles

6

Property, indicating that $3,478.96 was past due and due immediately and that total amount due was $6,088.77.  (Ex. G to Pl.'s Br.).  That letter also stated: "We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected in your credit report."  (*Id.*).  The letter further stated: "Our records indicate that your loan is in foreclosure.  Accordingly, this statement may be for informational purposes only."  (*Id.*).

Plaintiff filed suit against both Ocwen and Defendant on November 11, 2010, in the United States District Court for the Northern Division of Illinois.  (*See* Docket Entry No. 3).  The action was transferred to this Court on April 7, 2011.  On June 21, 2011, Plaintiff filed its Amended Complaint.  Defendant Ocwen was dismissed on June 24, 2011, after Plaintiff and Ocwen settled Plaintiff's claims against Ocwen.

## ANALYSIS

In its Motion, Defendant seeks summary judgment as to Plaintiff's FDCPA claim on the following four grounds: 1) the letter at issue was not a communication made "in connection with" the collection of a debt; 2) when the plaintiff knows that a debt collector is attempting to collect a debt that is not owed by him, he cannot sustain a claim under the FDCPA; 3) the "bona fide error" defense of 15 U.S.C. § 1692k(c) applies here; and 4) Plaintiff does not have standing to assert claims under 15 U.S.C. § 1692g.

**A.    Standing**

Because standing is a threshold determination, the Court will address Defendant's argument regarding standing first.

Plaintiff claims that Defendant violated several sections of the FDCPA, including

7

sections 1692d, 1692e, 1692f and 1692g.

In its motion, Defendant argues that because Plaintiff is not, in fact, obligated to pay the debt at issue, he is not a "consumer" and lacks standing to sue under 15 U.S.C. § 1692g. (Def.'s Br. at 11). The Court shall deny this ground for relief.

The FDCPA defines the term "consumer" as "any natural person obligated *or allegedly obligated* to pay any debt." 15 U.S.C. § 1692a(3) (emphasis added).

The statute does not explain whether the relevant status is the status of the obligation at the time of the communication or the actual status of the obligation after suit has been filed and discovery taken. This Court has not found any Sixth Circuit authority that answers this question. Nevertheless, the Court concludes that the relevant status has to be *the status at the time of the communication*. Otherwise, there would be no need to include the language "or allegedly obligated" to the definition. *See, e.g. Schlosser v. Fairbanks Capital Corp*., 323 F.3d 534, 538 (7th Cir. 2003) ("This suggests that the relevant status is that of the debt or asserted debt that is the subject of the collection activity, particularly when read along with the statute's definition of 'debt' as an 'obligation or alleged obligation,' *see id.* § 1692a(5), which (along with other definitions in the Act), *see, e.g., id.* § 1692a(3) (defining 'consumer' as one 'obligated or allegedly obligated to pay any debt') extends the reach of the statute to collection activities without regard to whether the debt sought to be collected is actually owed. *See Schroyer v. Frankel*, 197 F.3d 1170, 1178 (6th Cir. 1999) ("[T]he FDCPA holds 'debt collectors liable for various abusive, deceptive, and unfair debt collections practices regardless of whether the debt is valid.')").

Here, Plaintiff alleges that Defendant sent Plaintiff a written communication alleging that

Plaintiff was obligated under the mortgage for the Niles Property. Accordingly, the Court concludes that Plaintiff has standing as a consumer under the FDCPA and may proceed with a claim under § 1692g. *See Diaz v. D.L. Recovery Corp.*, 486 F.Supp.2d 474, *4 (E.D. Pa 2007); *Velazquez v. NCO Financial Sys., Inc.*, 2011 WL 2135633 (E.D. Pa. 2011).

**B.     Communication Made In Connection With The Collection Of A Debt**

The FDCPA "generally prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.' 15 U.S.C. § 1692e." *Grden v. Leikin Ingber & Winters, PC*, 643 F.3d 169, 172 (6th Cir. June 27, 2011).

Plaintiff alleges that Defendant violated several provisions of the FDCPA. The parties agree that, in order to be actionable under those provisions of the FDCPA, the communication at issue must have been made "in connection with" the collection of any debt.

Whether a given communication was sent "in connection with" the collection of a debt is a question of objective fact, to be proven like any other fact. *Gburek v. Litton Loan Serv. LP,* 614 F.3d 380, 385 (7th Cir. 2010); *see also Mielke v. Bank of America Home Loans Servicing LP*, 2011 WL 1464848 (E.D. Mich. 2011); *South v. Midwestern Audit Svs.*, Inc., 2010 WL 5089862 at *7 (E.D. Mich. 2010) ("[O]n summary judgment, the Court is to treat the question as one of objective fact" and "must therefore determine whether a reasonable jury could find that a communication was sent 'in connection with the collection of any debt.'").

The Sixth Circuit recently issued the *Grden* decision, which expands upon the nature of this inquiry. "The text of 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one." *Id.* In *Grden,* the Sixth Circuit "agree[d] with the Seventh Circuit that an 'explicit demand for payment' is not always

9

necessary for the statute to apply. *Gburek v. Litton Loan Serv. LP,* 614 F.3d 380, 385 (7th Cir. 2010). But it is just as clear that 'the statute does not apply to *every* communication between a debt collector and a debtor." *Id.* at 384-85 (emphasis in original). So the question is where to draw the line." *Grden*, 643 F.3d at 173. The Sixth Circuit then explained:

> We draw it at the same place the Seventh Circuit did in *Gburek*: for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor. *See id.* at 385 ("a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections" of the Act). Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment. *See, e.g., id.* at 386 (third-party letter directing debtor to contact creditor was sent in connection with collection of a debt). Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed, is one that has the requisite connection.

*Grden*, 643 F.3d at 173.

The *Grden* court ultimately concluded that, based on the facts of that case, "a reasonable jury could not find that an animating purpose of the statements was to induce payment by Grden" and it therefore affirmed summary judgment in favor of the defendant as to the balance statements at issue.

The court noted that some facts weighed against that conclusion – that the balance statements came from a debt collector and that they stated a balance due. "On the other hand, the statements themselves did not demand payment or threaten any consequences if [the plaintiff] did not pay. But for us the decisive point is that [the defendant] made the balance statements only after [the plaintiff] called and asked for them. The statements were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." *Id.*

*Gburek* is the Seventh Circuit decision that the *Grden* panel relied on heavily. *Gburek v. Litton Loan Serv. LP,* 614 F.3d 380, 385 (7th Cir. 2010). In *Gburek*, the plaintiff filed suit against its mortgage servicer (Litton) after she received letters from Litton offering to participate in loan-workout negotiations. The district court dismissed the claims against Litton, concluding that the letters were not made "in connection with" any debt-collection efforts because they did not contain an explicit demand for payment. The Seventh Circuit reversed.

In doing so, the Seventh Circuit noted "[n]either this circuit nor any other has established a bright-line rule for determining whether a communication from a debt collector was made in connection with the collection of any debt" and set forth factors that should be considered. *Id*. at 384. The court held that "a communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather, that a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA." *Id*. at 385. "[T]he absence of a demand for payment is just one of several factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." *Id.* "The nature of the parties' relationship is also relevant," and weighs in favor of a finding that a communication was made "in connection with" the collection of a debt when the only relationship the defendant has with the plaintiff arises out of the plaintiff's defaulted debt. *Id.*

Thus, under *Grden* and *Gburek,* several factors should be considered in determining whether a communication was made "in connection with" the collection of a debt. Those factors include the nature of the parties' relationship and the purpose and context of the communication. The factors also include whether the communication: 1) contains a demand for payment; 2) is

11

from a debt collector; 3) demands payment or states a balance due; 4) states that it is an attempt to collect a debt; 5) threatens consequences if the plaintiff does not pay; 6) was sent in response to an inquiry or request from the plaintiff; 7) states that the sender is not authorized to accept payment; and 8) is part of a strategy to make payment more likely or was made to induce the debtor to settle his or her debt.

Applying these factors in this case demonstrates that the Defendant's letter is a communication in connection with the collection of debt under the FDCPA and that a reasonable jury could not find otherwise.

Factors that weigh in favor of finding that Defendant's letter to Plaintiff was a communication "in connection with" the collection of a debt include:  1) the nature of the parties' relationship: the only relationship that Defendant has with Plaintiff arises out of Plaintiff's alleged debt; 2) demand for payment: "although not an explicit demand for payment, telling a debtor that a certain amount is due on their account is an implicit demand for payment." *Mielke*, *supra*, at *7; 3) statement that it is an attempt to collect a debt: Defendant's letter does have language indicating that it is an attempt to collect a debt – so long as the Plaintiff is not in bankruptcy (*see* Ex. F to Pls.' Am. Compl. at 3); 4) threatens consequences if Plaintiff does not pay: Defendant's letter does have language threatening foreclosure if Plaintiff does not pay or obtain a loan modification (*Id.*); 5) sent in response to Plaintiff inquiry: Defendant's letter was not sent in response to an inquiry from Plaintiff; 6) payment not authorized: Defendant's letter does not state that Defendant is not authorized to accept payment from Plaintiff; and 7) part of strategy to induce the debtor to settle his debt: Defendant's letter was an offer to discuss "repayment options, which qualifies as a communication in connection with an attempt to collect

a debt." *Grubek, supra,* at 386; *see also Mielke, supra*, at *19-20.

## C.     Knowledge Of No Debt

In this case, Plaintiff alleges that Defendant violated the following sections of the FDCPA: 1) § 1692d; 2) § 1692e; 3) § 1692f; and 4) § 1692g.  (*See* Pl.'s Am. Compl. at 6-7).

Relying on the following cases, Defendant contends that Plaintiffs' claims must be dismissed because Plaintiff knew that Defendant was attempting to collect a debt that was not actually his debt:  *Kujawa v. Palisades Collection, LLC*, 614 F.Supp.2d (E.D. Mich. J. Cohn); *Kaniewski v. National Action Financial Svs.*, 678 F.Supp.2d 541 (E. D. Mich., J. Cleland); and *Hill v. Javitch, Block & Rathbone, LLP,* 574 F. Supp.2d 819 (S.D. Ohio 2008).

"Sections 1692(e) and 1692(f) prohibit debt collectors from using 'false, deceptive, or misleading representations' or "unconscionable means' to collect debts." *Kane v. National Financial Svs., Inc*., 2011 WL 6018403 (E.D. Mich. 2011); 15 U.S.C. § 1692e and § 1692f. "Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer." *Grden*, 643 F.3d at 172.  "The test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them." *Id*.

"Applying this standard, district courts in this circuit[1] have held that when a plaintiff knew that the debt collection agency was not attempting to collect on a debt owed by him, then as a matter of law, he cannot sustain an FDCPA claim under § 1692(e) or § 1692(f)." *Kane, supra*, at * 4.

---

[1]At least one district court has rejected this argument, disagreeing with the cases from this district.  *See Jeter v. Alliance One Receivables Management, Inc*., 2010 WL 2025213 (D. Kan. 2010).

In *Kujawa,* the district court "held that a plaintiff who knew that the defendants were not attempting to collect on a debt owed by him could not sustain an FDCPA claim under § 1692(e) as a matter of law." *Kaniewski,* 678 F.Supp.2d at 546.

In *Kaniewski,* the district court concurred with the district court in Kujawa, and concluded that, with respect to Plaintiff's claims under § 1692e and § 1692f, the plaintiff could not meet the least sophisticated consumer test because he knew that the defendant was not trying to collect a debt that was owed by him. The court therefore granted summary judgment "with respect to Plaintiff's claims under § 1692e and § 1692f." *Kaniewski,* 678 F. Supp.2d at 546. The court did not grant summary judgment as to Plaintiff's claims under § 1692d on that basis. *Id.* at 546-47.[2]

Relying on *Kujawa* and *Kaniewski,* in *Kane* the district also dismissed the plaintiff's claims under § 1692e and § 1692f because the undisputed facts establish[ed] that [the plaintiff] knew that the defendant was attempting to collect a debt owed by Ms. Bartlett, not by him." *Kane, supra*, at *4. Although the plaintiff in that case also asserted claims under § 1692d, the district court did not dismiss the § 1692d claims on that ground.

In *Hill,* the district court dismissed a claim on this same ground, but the only claim it dismissed on this ground was the plaintiff's § 1692f claim. *Hill v. Javitch, Block & Rathbone, LLP,* 574 F. Supp.2d 819 (S.D. Ohio 2008).

Here, in addition to his claims under § 1692e and § 1692f, Plaintiff asserts claims under

---

[2]The court did question whether the § 1692d claim should be dismissed on that same basis and allowed supplemental briefing by the parties. *Id.* at 546-47. Ultimately, however, the district court *did not* dismiss the § 1692d claim on that ground. (*See* Docket Entry No. 23 in Case No. 09-12159, the *Kaniewski* case).

14

§ 1692d and § 1692g. Thus, while the above authorities support Defendant's contention that Plaintiff's § 1692e and § 1692f claims fail as a matter of law because Plaintiff knew that he did not actually owe the debt, Defendant has not presented the Court with any authority stating Plaintiff's remaining claims, brought under § 1692d or § 1692g, should be dismissed on this basis.

Moreover, the rationale for dismissing claims under § 1692e & § 1692f does not extend to claims brought under § 1692d or § 1692g. For example, unlike § 1692e, Section 1692d does not involve representations that could be deemed "false, deceptive or misleading" and thus the "least sophisticated consumer" standard is not going to apply. Section 1692d provides that a debt collector cannot "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Regardless of whether the person receiving the communications knows he or she does not actually owe the debt in question, the debt collector could engage in conduct that could be deemed harassing, oppressive or abusive (eg., calling the wrong person several hundred times or threatening violence).

In addition, the Court concludes that not extending this line of cases to claims under § 1692d and § 1692g is supported by the FDCPA's broad purpose of eliminating abusive debt collection practices and the legislative history of the FDCPA. H.R.Rep. No. 131, 95th Cong. 2st Sess. 8 ("This bill also protects *people who do not owe money at all*. In the collector's zeal, collections effort[s] are often aimed at *the wrong person either because of mistaken identity or mistaken facts*. This bill will make collectors behave responsibly towards people with whom they deal. . .") (emphasis added).

Accordingly, the Court concludes that Plaintiff's FDCPA claims under § 1692e and

§ 1692f fail as a matter of law but that Defendant has not established that Plaintiff's claims under § 1692d or § 1692g should be dismissed on this basis.

**D.     Bona Fide Error Defense**

The FDCPA includes an affirmative defense, set forth in § 1692k(c), that is commonly known as the bona fide error defense:

> (c) Intent
> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows *by a preponderance of the evidence* that the violation was not intentional and resulted from a bona fide error *notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.*

15 U.S.C. § 1692k(c) (emphasis added).  To qualify for the bona fide error defense, a debt collector must prove by preponderance of the evidence that: 1) the violation was unintentional; 2) the violation was a result of a bona fide error; and 3) the debt collector maintained procedures reasonably adapted to avoid any such error.  *Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 614 (6th Cir. 2009).

Although Defendant's brief acknowledges the above standards and requirements, it asserts that it is entitled to the defense without explaining what procedures it has maintained to avoid such errors.  (*See* Def.'s Br. at 10-11).  Neither Defendant's brief nor its Statement of Facts discuss any procedures that Defendant maintains nor do they explain how such procedures should be deemed reasonably adapted to avoid errors like the one in this case.  Defendant did submit an affidavit from Randall Miller as an exhibit, but the Court finds that insufficient to warrant a ruling of summary judgment in this case – where the Plaintiff notified Ocwen in writing that he had no interest in any land in Michigan before the account was sent to Defendant. As Plaintiff notes, Defendant has not presented any evidence as to "whether it would even

16

inquire – as a matter of procedure – if the debt it was collecting had been previously disputed by the consumer." (Pl.'s Br. at 14). While Defendant may ultimately prevail on this defense, the Court concludes it is an issue for the trier of fact given these facts and given the manner in which Defendant presented this ground for relief (ie., not discussing or explaining its procedures in its brief).

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendant Randall S. Miller & Assocs., P.C.'s Motion to Dismiss and/or for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED to the extent that Plaintiff's claims under § 1692e and    § 1692f of the Act are DISMISSED. The motion is DENIED in all other respects.

IT IS SO ORDERED.

                              S/Sean F. Cox
                              Sean F. Cox
                              United States District Judge

Dated: December 8, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 8, 2011, by electronic and/or ordinary mail.

                              S/Jennifer Hernandez
                              Case Manager